LAND, J.
On the first appeal, this case was remanded for further evidence and proceedings according to law. See 112 La. 511, 36 South. 547.
Plaintiff sued for $4,826.35, alleged overpayment of taxes for the years 1898, 1899, 1900, and 1901. The defendant parish reconvened for alleged balance due on the rolls of 1900 and 1901, and also for forfeited commissions and penalties. There was judgment in favor of the plaintiff as prayed for, and the defendant appealed.
In our opinion we said:
“The real dispute in this case is over two settlement receipts produced by the plaintiff, and bearing the signature of the parish treasurer—one for $3,755.15, of date January 12, 1901, and the other for $7,313.76, of date December 20, 1901.”
While admitting his signature on the receipts, the treasurer denied under oath that the certificates, cash orders, and cash mentioned therein were delivered to him, and testified that old receipts had been altered and used in the fabrication of the two disputed receipts.
On the other hand the plaintiff testified that the receipts were genuine and truly represented certificates, orders, and cash actually delivered to the treasurer at the time. The evidence showed that in the usual course of business duplicates of the settlement sheets made out by the tax collector, with the certificates, orders, and cash mentioned therein, were delivered to the treasurer, who in turn delivered the same to the parish auditor for examination, approval, and entry. The court found that this had not been done in the case of the two disputed settlement receipts, and that the parish records furnished no evidence of the alleged settlements. The court, without passing on the genuineness of the disputed receipts, reached the conclusion that they were insufficient per se to establish as against the parish the validity of the orders and certificates or their receipt in payment. The court, therefore, remanded the cause to enable the tax collector to prove that he had paid, at the instance and request of the police jury, valid obligations of the parish.
The case was tried, again, and the result was a judgment in favor of the defendant for *382 $6,327.28, with 5 per cent, per month interest from July 30,1902, from which the plaintiff has appealed.
On the second trial the plaintiff' undertook to prove that the orders, certificates, etc., embraced in the two disputed settlement sheets or receipts, were valid obligations of the parish.
The settlement sheet of date January 12, 1901, called for jury certificates, $637; witness certificates, $321; commissions, $187.75; cash orders, $2,598.30; and cash, $11.10— making a total of $3,755.15.
The settlement sheet of date December 20, 1901, called for jury certificates, $637; witness certificates, $215.10; commissions, $365.60; cash orders, etc., $6,000.65; and cash, $52—making a total of $7,313.76.
“Cash orders” were claims against the parish, which had been allowed, entered to the credit of the proper parties on the books of the auditor, and by that official certified as correct and due. Where such a claim was paid in by the tax collector, through the treasurer, it was debited to the proper party and credited dn the tax roll. It was also covered by a warrant issued in favor of the treasurer. Sometimes a single warrant covered many items, payable out of the same fund, which were noted both on the warrant and the warrant stub book. Hence, when a “cash order” was delivered to the auditor and entered, it •could be readily traced through his books. Separate warrants were always issued for the commissions of the tax collector, and the system enabled the auditor to specify what warrants were embraced in a particular tax settlement and what claims were represented by the warrant. All of the undisputed settlements were entered in this manner, and the tax collector received proper credits of the tax roll. On thfe former trial all of the undisputed settlement receipts were offered in evidence by the plaintiff; his real contention being that he was entitled to additional credits as shown by the two disputed settlement receipts.
On the last trial the plaintiff undertook to identify warrants on the auditor’s books with claims on the disputed settlement sheets. Counsel for plaintiff in his brief says:
“It is a fact that many, if not all, of these items, do appear in the auditor’s hooks under dates subsequent to the disputed treasurer’s settlement sheet or receipt to the sheriff.”
As there is nothing on the face of the auditor’s books by which items subsequently entered can be identified with the certificates and cash orders referred to in the disputed settlement sheets, but not described, it follows that such identity must be established aliunde. Plaintiff’s testimony substantially is that the cash orders consisted of a large number of claims due by the parish, which were subsequently delivered to the auditor and by him approved as valid as shown by his books and warrants. This identification rests oh the testimony of the plaintiff alone, and is open to the fatal objection that, if true, he has already received credit for the items in controversy.
The auditor testified postively that the disputed settlement sheets were never entered on his books, and that the items which plaintiff claimed to identify with such sheets were all entered in other tax settlements.
The treasurer also testified that the disputed sheets, with their vouchers, were never delivered to him by the tax collector. Hence they could not have been delivered by the treasurer to the auditor.
After carefully reviewing all the evidence in the record, we see no good reason to reverse the conclusions of the trial judge, who in summing up said:
“Some of the items the tax collector alleges he paid in the disputed settlements were actually paid by him into undisputed settlements made prior to the date of the disputed settlements; some were paid in no tax settlements at all, but directed to the creditors, as shown by the check and book entries: while the rest were paid *384 in subsequent settlements not in dispute by either party to this suit, and the books show exactly each item that composed these settlements.”
Plaintiff, having received credit in other and genuine settlements for the valid paper he claims to have paid in the two disputed settlements, has no ground to complain.
The argument that the treasurer substituted paper received in the disputed settlements for other paper received in undisputed settlements is not sustained by the evidence. If all the paper was valid, there was no reason for such a substitution, since the treasurer could have refloated the one as well as the other. According to the theory of substitution, there would have remained outstanding valid parish obligations, about $11,000, in amount, not covered by the warrants of the auditor. On the last trial the auditor testified that when he went out of office in June, 1904, all approved claims against the parish which were in existence in 1901 had been paid, except about $469.01. Plaintiff’s suit is based on the theory that the parish still owes certificates and cash orders issued prior to January 12, and December 20, 1901, aggregating about $11,000. On the former trial the expert accountant, who had made an examination of all the parochial books and records, testified that the collection of taxes for 1900 and 1901, as per the tax collector’s stub books, showed a considerable shortage for each year, and that, if that official be credited with the •disputed settlement receipts, the result would be an overcolleetion of $3,955.78 on the roll of 1900 and an overcollection of $2,739.83 on the roll of 1901.
Without going further into the details, we conclude that the two disputed settlements are discredited by the evidence, both testimonial and documentary, adduced on the two trials of this cause.
Plaintiff’s counsel has called our attention to a number of bills of exception taken to the rulings of the court excluding evidence-offered in rebuttal. All of the evidence ruled out on both sides was documentary and has been brought up before this court. Counsel, therefore, has had abundant opportunity to refer the court to such evidence both in argument and brief..
When the evidence, improperly excluded, is found in the record annexed to bills of exception, it will be considered, and the case will not be remanded. Copley v. Edwards, 5 La. Ann. 647; Trimmel v. Marvel, 11 La. Ann. 404; Elliott v. The James Robb, 12 La. Ann. 12; Farwell v. Harris & Morgan, Id. 50; Boulard v. Calhoun, 13 La. Ann. 445; Wood v. Harrell, 14 La. Ann. 61; McMichael’s Ex’rs v. Raoul, Id. 307; Sampson & Keene v. Noble, Id. 347.
In opening the evidence on the second trial it was agreed that the scope of the investigation should be confined to the two disputed settlements; plaintiff proposing to prove that the orders and certificates included therein were valid outstanding obligations of the parish, and were paid by him, and were received by the parish treasurer.
We have already stated how this inquiry was conducted and the result of the same. In rebuttal plaintiff offered in evidence sundry reports of the auditor made after the date of the last disputed settlement. Objection was made that the evidence had been restricted to the legality and verity of the item claimed by plaintiff. The objection was sustained on the ground that the evidence had no bearing on the case, but the ruling was confined to reports made after the suit was filed. The record does not show for what purpose the reports were offered.
Plaintiff next offered certain pages of the auditor’s ledger, showing “Sheriff’s Expenses” and “Interest Account and Insurance.” Objection was made as to the latter as irrelevant, unless the plaintiff could show that he had paid interest for the parish. *386 Counsel for plaintiff stated his reasons for the offer, but the court couldnot see the relevancy of the evidence. The object of the offer seems to have been to show that a claim against the sheriff for interest was not shown by the interest account. The statement in, the record as to the purpose of this evidence is very confused, owing doubtless to the imperfect manner in which the reasons assigned by counsel were taken down. Their gist seems to have been that defendant had adduced testimony to the effect that a certain check contained a certain amount, including an item of interest, which did not appear on the interest account, and witnesses undertook to locate it in a different place.
We must confess that from the record we cannot perceive the relevancy of the evidence to the issues before the court, but assume from statements of counsel made after the ruling that the object of the offer was to show a loose system of bookkeeping.
The offer of the “sheriff’s expense account” was ruled out as not relevant to the issues. Plaintiff offered also accounts of W. S. Roberts and W. P. Burden on the auditor’s ledger. The purpose as to the first account is not stated. The second was offered to discredit both witnesses. The objection was that the attention of the witnesses had not been called to the account. This objection was sustained. Plaintiff offered a list of cash orders and other papers purporting to have been paid in the undisputed settlement of December 13, 1901. This offer was ruled out as not in rebuttal of any evidence offered by the defense. Similar offers were made as to other settlements not in controversy. Plaintiff finally offered quietus to tax collector for the years 1902 and 1903, all of which evidence was ruled out. No formal bills of exception were made out, with rejected evidence attached thereto; but the offers, objections, and rulings appear in the notes of evidence, and it was agreed by counsel that no formal bills of exception be written out, nor certified copies of the offerings, but the books and documents themselves should be produced before the Supreme Court.
Counsel for plaintiff discuss the bills of exception in their brief, but have not furnished the court with extracts from the books showing what evidence was offered. Hence we cannot follow or appreciate their argument. A cart load of books and documents has been produced by the litigants, and it is asking too much of the court to sort them out and find the particular book and page referred to. We gather from the brief of counsel that the auditor’s reports to the police jury were offered in contradition of the statements of the auditor and treasurer and in contradiction of the books and tabulated statements offered by defendant. The particular matters sought to be contradicted are not set forth in brief of counsel.
If it was intended to discredit the testimony of the witnesses for the defense, they should have been examined as to the reports offered. The “interest account” is stated in the brief to have been offered in rebuttal of statement made by the auditor, to show his system of bookkeeping and the fallacy of his entries. In short, the offer was made to discredit the testimony and the books of the auditor. Other similar offers were made for the purpose of “affecting the credibility” of the auditor and treasurer as witnesses. If such was the purpose, in common fairness the witnesses’ attention should have been called to the reports and entries, and an opportunity given them to explain or correct their testimony.
In rebuttal plaintiff offered what purported to be a list of the cash orders and other paper in detail delivered to the parish treasurer in the undisputed settlement of December 13, 1900. The object was to prove that “paper turned over in one settlement was credited at another time to show the shift *388 ing of the paper,” and that on December 13, 1900, the paper turned in “was called for «n a settlement before and after the disputed ■■settlements.”
If plaintiff received credit for the paper, )it matters not whether it was shifted from one settlement to another. It may be that, when several settlements were entered by the auditor at the same time, paper belonging to ■one settlement might be credited to another •settlement. We do not see, however, how ■mistakes or errors of this kind can affect the ••result of settlements which are undisputed and judicially admitted to be correct. Plaintiff '■has claimed the benefit of these settlements by offering them in evidence as vouchers in ■his favor. The auditor’s books were used by ■;the plaintiff to prove that the items which he ■claimed entered into the two disputed settlements were valid obligations of the parish. ’When, however, the same books showed that ¡the items which plaintiff claimed to identify •with the disputed settlements were paid by the parish in other settlements, plaintiff undertook in rebuttal to prove that the books and the hitherto undisputed settlements were wholly unreliable. Had the evidence been .-admitted, and it had been shown that paper ■wh'ic’h belonged to one genuine settlement had been shifted to another genuine settlement, the result would not have been changed.
Such evidence would not aid plaintiff in ■proving the existence and validity of the disputed settlement, nor can we see how the impeachment of the correctness of the auditor’s books on which plaintiff relied to establish the validity of his claims can aid him in this cause.
We see no merit in the exceptions reserved ■by plaintiff to the rejecting of the evidence offered by him in the court below.
The claim of the defendant for the forfeiture of commissions on settlement made and accepted by the police jury from time to time is the next question in the case. We see no reason why such a forfeiture may not be waived by the police jury, and concur in the opinion of the judge a quo that the conduct of the police jury in accepting belated monthly statements from year to year, without protest or objection, amounted to such waiver. -Such settlements are equivalent to voluntary payment of commissions.
The interest at the rate of 5 per cent, per month allowed by the judgment in favor of the defendant is in strict accordance with the provisions of section 79, p. 380, of Act No. 170 of 1898. Such interest is a part and portion of the taxes unlawfully withheld by the tax collector, and commences to run from the time the taxes should have been paid.
Judgment affirmed.