579 So.2d 1136 (1991)
Felix Alexander HESSER and Sally Hesser Bates, Plaintiff/Appellant,
v.
Alf RICHARDSON, Alf Richardson Jr. and Hewitt Richardson, Defendant/Appellee.
No. 22298-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1137 Plummer, Means & Burgess by David B. Means, III, Mansfield, for plaintiff/appellant.
Bethard & Davis by James G. Bethard, Coushatta, for defendant/appellee.
Before LINDSAY, BROWN and STEWART, JJ.
LINDSAY, Judge.
This is a petitory action. The plaintiffs, Felix Hesser and Sally Hesser Bates, appeal a trial court judgment finding that the defendants, Alf Richardson, Alf Richardson, Jr. and Hewitt Richardson acquired ownership by thirty year acquisitive prescription of a tract of land known as the old Chemard Lake Bed in DeSoto Parish. We affirm the trial court judgment.

FACTS
The property in dispute in this case is an irregularly shaped portion of the dry lake bed of Chemard Lake referred to by local residents as the "brake." The property was previously the subject of a possessory action filed by the Richardsons. See Richardson v. Hesser, 516 So.2d 1288 (La. App.2d Cir.1987).
According to this court's opinion in the possessory action, in 1944 or 1945, Alf Richardson built a house on a piece of property to the west of the dry lake bed or brake. He consistently raised crops on the property and ran cattle in the dry lake bed. At some point, at least a portion of the property surrounding Mr. Richardson's house was fenced. Continental Hodge Woodlands Incorporated (Continental) *1138 claimed ownership of the high ground around Alf Richardson's house and bordering the dry lake bed. In October, 1983, Continental instituted a petitory action against Mr. Richardson. This dispute was resolved when Continental quitclaimed to Mr. Richardson three acres of land surrounding his house. Mr. Richardson quitclaimed the remainder of the high ground to Continental. However, this agreement excluded the dry lake bed of Chemard Lake which is the subject of the present litigation.
In 1978, the Hessers executed a coal and lignite lease in favor of CLECO and SWEPCO covering the dry lake bed. In 1985, the Richardsons instituted a possessory action against the Hessers, claiming to be in possession of the dry lake bed. The trial court found that the Richardsons had not proved possession of the lake bed.
This court reversed the trial court judgment. Richardson v. Hesser, supra. We held that the evidence showed the Richardsons had in fact been in possession of the dry lake bed. This court found that the Richardsons had taken corporeal possession of the property "many years ago" and continued that possession at least until 1985. This court further found that the Richardsons possessed within enclosures and that even after Mr. Richardson moved out of his house in the early 1980's, the Richardsons continued to raise cattle, repair fences and cut firewood from the property in question. We recognized the Richardsons' right to possession of the "old lake bed of Chemard Lake known as the break [sic], located in the SW 1/4 of the NW 1/4 and the NW 1/4 of the SW 1/4 of Section 11, Township 11 North, Range 11 West, DeSoto Parish, Louisiana."
As a part of this court's decision, the Hessers were ordered to assert their claim to ownership of the disputed property within sixty days of the date our opinion became final. The present suit, filed by the Hessers, was instituted in response to that order. The Hessers claim to be record owners of the disputed property. The Richardsons answered and claimed ownership of the property by virtue of thirty years acquisitive prescription.
At trial, the Hessers proved they held record title to the lake bed. The Richardsons then sought to establish their claim to ownership of the property by acquisitive prescription. The main factual dispute in this case is whether the property had in fact been fenced along the southern boundary for more than thirty years.
The Richardsons presented several witnesses who testified that the entire property had been fenced for more than thirty years and that the Richardsons lived on the property and raised crops and cattle during that time. On the contrary, the Hessers offered testimony that the fence on the southern boundary was not present in the early 1970's and that the fence which now exists was put up approximately twenty years ago.
The trial court weighed the evidence and found that the Richardsons had proved ownership by acquisitive prescription. In written reasons for judgment, the trial court noted that the fencing on the property had been completed for at least thirty years prior to 1985 and that the Richardsons had acquired title to the dry lake bed by acquisitive prescription. The Hessers appealed.

ADMISSIBILITY OF THE RECORD IN PRIOR PROCEEDINGS
At the trial, the Richardsons sought to introduce the entire record and the exhibits from the possessory action between these parties. The Hessers objected, claiming that the introduction of the record of the prior proceeding would deny them the right of cross-examination "on the issue of the term of possession." The trial court declined to rule on the matter at that time, instead choosing to take the matter under advisement. In reasons for judgment, the trial court stated that the entire record from the prior proceedings was admitted. On appeal, the Hessers assert that the trial court erred in making this ruling. They argue that the trial court failed to follow the proper procedures for introducing the record of the possessory action. They also *1139 argue that the trial court erred in taking this evidentiary matter under advisement because it failed to allow them an opportunity to rebut the record and therefore denied them their right to full cross-examination. The Hessers also argue that there was no showing that the witnesses in the possessory action were not available to testify in the present action, that the issues in the two cases were not the same and that the record of the possessory action would not be the "best evidence." These arguments have merit, but we find that the admission of the prior record constitutes harmless error.
The Hessers argue that the trial court erred in failing to follow the procedure for admission of records set forth in LSA-R.S. 13:3723. Specifically they argue that the trial court erred in taking the matter under advisement and ruling on the issue of admissibility after the conclusion of the trial. LSA-R.S. 13:3723 provides:
Whenever, during the trial of any suit or process, whether civil or criminal, before any of the district courts, either party may desire to offer into evidence any record, paper or document belonging to the file or records of the district court of the parish in which the trial is proceeding, the presiding judge at the request of such party shall direct the clerk of the district court to produce such record, document, or paper, in order that it may be used in evidence. The clerk in any such case shall not have to make a copy of any such record, document, or paper, unless the case in which it is offered is appealed, in which case the transcript of appeal shall be made up from the papers themselves.
However, the jurisprudence holds that LSA-R.S. 13:3723 is designed for the convenience of the parties in the production of evidence but it does not govern the admissibility of such evidence after it is produced by the clerk. Wells v. Allstate Insurance Company, 510 So.2d 763 (La.App. 1st Cir. 1987), writ denied 514 So.2d 463 (La.1987). Although the Hessers' argument regarding this statute is misplaced, they are correct in arguing that some predicate must be laid to establish a need for the testimony under LSA-R.S. 13:3723. Montgomery v. Breaux, 297 So.2d 185 (La.1974).
LSA-C.E., Art. 804(B)(1) provides:
B. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Testimony given as a witness at another hearing of the same or a different proceeding if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception. (Emphasis supplied)
Prior to the enactment of the Code of Evidence, the jurisprudence held that, in order for testimony taken at a prior judicial proceeding to be admissible as evidence in a subsequent proceeding, there must be a showing that (1) there exists an identity of parties between the two proceedings; (2) there exists an identity of issues in the two proceedings; and (3) the witness whose testimony is sought to be introduced is unavailable for production at the later trial. There must also have been opportunity for full cross-examination on the identical issues at the prior proceeding. Stutts v. Humphries, 408 So.2d 940 (La.App. 2d Cir. 1981); Bulk Transport, Inc. v. Louisiana Public Service Commission, 252 La. 9, 209 So.2d 4 (1968).
In the present case, the parties in the possessory action are identical and the issues in the two proceedings are substantially the same. See Stutts v. Humphries, supra. However, the Richardsons made no showing that the witnesses in the prior possessory action were unavailable to testify at the trial of the petitory action. Therefore, the record from the possessory action was not properly admitted into evidence.
However, in reaching an ultimate decision on such an alleged procedural error, the court must consider not only *1140 whether the particular ruling constituted error, but also whether the error caused harm or prejudice to the parties. Unless prejudice resulted, reversal is not warranted. Wallace v. Upjohn Company, 535 So.2d 1110 (La.App. 1st Cir.1988), writ denied 539 So.2d 630 (1989).
Further, the party alleging error has the burden of showing that the error was prejudicial to his case. In other words, the determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir.1985), writ denied 481 So.2d 631 (La.1986).
We find that although the trial court was in error in allowing the record from the possessory action to be admitted into evidence, this error was harmless. Without considering any of the testimony or the exhibits in the possessory action, the Richardsons presented sufficient evidence at the trial of the petitory action to support the trial court judgment in their favor. In addition, the possessory and petitory actions were brought in the same court, before the same judge and many of the same witnesses who testified in the possessory action also testified in the petitory action. Therefore the record in the possessory action has no effect on the outcome of the present case and constitutes mere surplusage.

ACQUISITIVE PRESCRIPTION
At trial, the Hessers were able to demonstrate record title to the disputed property. However, the Richardsons claimed to have acquired ownership of that property by acquisitive prescription of thirty years.
Following the trial, the trial court found that the Richardsons had farmed the property and raised cattle on the property for at least thirty years prior to 1985. Most importantly, the trial court found that the property had been entirely fenced for more than thirty years. The Hessers have appealed the trial court judgment, particularly complaining of the latter finding, claiming that the Richardsons were required to show possession of the property within enclosures for at least thirty years and that they failed to show that the southern boundary of the tract had been fenced for that period of time.
Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time. LSA-C.C. Art. 3446. Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith. LSA-C.C. Art. 3486. The possession must be continuous, uninterrupted, peaceable, public and unequivocal. LSA-C.C. Art. 3476.
For purposes of acquisitive prescription, without title, possession extends only to that which has been actually possessed. LSA-C.C. Art. 3487. The one claiming acquisitive prescription must show that he possessed all of the property to visible boundaries. Rogers v. Haughton Timber Company, 503 So.2d 1079 (La.App. 2d Cir. 1987).
The corporeal possession necessary to support prescription is governed by the nature of the land and the use to which the land is put. Where a party claims only by corporeal detention without title, he must show an adverse possession within enclosures. An enclosure does not require a fence but it does require that the land possessed as owner may be established with certainty, either by natural or artificial marks sufficient to give notice to the world of the character and the extent of the possession, as well as its full identity and its certain boundaries. Alford v. Jarrell, 471 So.2d 970 (La.App. 1st Cir.1985).
The burden of proof to establish facts essential to support a plea of acquisitive prescription rests upon the party who makes the plea. Rogers v. Haughton Timber Company, supra. In a petitory action, the court may determine whether a party is in possession of the property without regard to the judgment in the previous possessory action. Tenneco Oil Company v. Pitre, 496 So.2d 502 (La.App. 1st Cir.1986), writ denied 497 So.2d 1388 (La.1986).
In the instant case, the testimony presented by witnesses on behalf of the *1141 Richardsons shows that Alf Richardson had fenced and possessed the disputed property since at least 1945. The witnesses specifically testified that a fence existed on the southern boundary of the property, across the brake, in excess of 30 years.
Doyle Sanders, a professional land surveyor, surveyed the disputed property for Alf Richardson in 1980. In Mr. Sanders' testimony, he noted that very old fences existed on the northern and eastern boundaries of the tract. He also noted that there was a fence on the southern boundary as well. Mr. Sanders stated that a previous survey of the property had been done in 1975 by Mr. Gordon Russell in order to establish the boundary of the brake. Mr. Sanders testified that the fence on the southern boundary had been constructed a long time prior to that survey.
Mr. J. T. Hector, a 69 year old neighbor of Alf Richardson, testified that he was familiar with the area and knew that Alf Richardson farmed a portion of the land and raised cattle on it. He described a fence around the entire property and testified that he first knew of the fence in about 1924.
Mr. Artis Thomas, 74 years old, testified that he had known Alf Richardson for about 60 years and knew that Alf Richardson raised a garden and had livestock. Mr. Thomas also testified that the "back portion" of the disputed property was fenced and that the fence had been there for at least 60 years.
Shirley R. Payne, 37 years old, a niece of Alf Richardson, testified that there was a fence on the back portion of the disputed tract, along the southern boundary, running close to a creek in which she fished as a child.
Amos Richardson, Alf Richardson's son, testified that a fence had been present on the disputed tract at least since 1952. This testimony was corroborated by the testimony of Hewitt Richardson, another son of Alf Richardson. Hewitt Richardson testified that a fence had been present on the property for as long as he could remember. At the time of trial, Mr. Richardson was 45 years of age.
The Hessers introduced into evidence the deposition of Mr. William J. Sneed, an oilman who worked in DeSoto Parish in the early to mid-1970's. Mr. Sneed was acquainted with Alf Richardson and was familiar with the disputed tract. Mr. Sneed testified that he was involved with a number of drilling sites in the area and had traversed the brake extensively in the early 1970's. He testified that in 1970, there was no fence present on the southern boundary of the disputed property. The Hessers also introduced the deposition of Mr. Printis Murphy, a professional land surveyor and forestry consultant, who inspected the disputed tract on September 9, 1989. Mr. Murphy testified that a fence existed on the southern boundary of the tract. This fence had been present long enough for the fence wire to grow into oak, elm, and gum trees, approximately three inches. Mr. Murphy took core samples of the oak and elm trees and estimated the age of the fence at no more than 21 years.
The trial court finding in this case is based largely upon a credibility determination. After examining all of the testimony and evidence, the trial court found that the Richardsons had shown possession of the property within enclosures for more than thirty years and declared them to be the owners of the property by acquisitive prescription. Although the testimony of Mr. Sneed and Mr. Murphy is persuasive, nevertheless, the trial court was in the best position to determine the credibility of the witnesses and the weight of the evidence. Our review of the record does not show that the trial court's findings were clearly wrong. No manifest error is present. Accordingly, the trial court judgment will not be set aside.

CONCLUSION
The trial court judgment in favor of the Richardsons is affirmed. Costs are assessed to the Hessers.
AFFIRMED.