STEWART, J.
|,The City of Shreveport (“the city”) is appealing the trial court’s judgment ordering that, if deemed necessary, it is to remove the sidewalk, at its expense, in order to make accommodations for Corrie Johnson Wilkins to be buried next to her husband. For the reasons that follow, we affirm.
FACTS
Mrs. Wilkins is the owner of the Leonard Johnson Wilkins burial plot (“family plot”) located in Greenwood Cemetery, Shreveport, Louisiana. The family plot contains six gravesites, which are occupied by Mrs. Wilkins’ parents, grandparents, aunt, and her late husband, Robert L. Wilkins. A public sidewalk runs adjacent to the family plot, specifically Mr. Wilkins’ grave,[1] and ends abruptly at the foot of his grave. After her death, Mrs. Wilkins wants to be buried next to her husband. In order to accomplish this, she wants the sidewalk removed to create her burial site.
Mrs. Wilkins contacted Keith Gallagher, the regional vice-president of Suhor Industries (“Suhor”), to discuss the removal of the sidewalk so that another grave can be put in its place. Suhor manufactures burial vaults and maintains cemeteries. It recently purchased Boxeo, Inc. (“Boxeo”), a company that assumed the duties of sexton [2] for Greenwood Cemetery on behalf of the city in the 1970s. At the time Suhor acquired Boxeo, it was owned and operated by Barry Box. When Suhor purchased Boxeo, it assumed some of the sexton duties at Greenwood Cemetery.
I ?Mr. Gallagher testified that Mrs. Wilkins contacted his office regarding the removal of the sidewalk adjacent to the family plot. After inspecting the area, he determined that because the sidewalk was in poor condition, it could be removed to accommodate her request.
On March 20, 2007, Mr. Gallagher met with Shreveport’s city attorney, Terri Scott, and the director of Shreveport Parks and Recreation (“SPAR”), Shelly Ragle.[3] During this meeting, Mr. Gallagher proposed the idea of moving the sidewalk. He testified that everyone at the meeting agreed that the sidewalk did not serve a purpose and that another grave could be put in that spot. Mr. Gallagher sent a letter discussing his recollection of the meeting to Mrs. Wilkins.
Mrs. Wilkins contends that the letter creates an agreement between her and the city. More specifically, she alleges that on or about March 26, 2007, she entered into an agreement with the city, namely, Attorney Scott, and Shelly Ragle, to have the sidewalk removed so that another grave could be put in its place. The city denies entering into any agreement with Mrs. Wilkins.
By May 9, 2009, the city had taken over the management of the cemetery. On May 13, 2009, when Mrs. Wilkins contacted the cemetery again regarding graves-ites, a SPAR representative informed her that the alleged agreement would not be honored and that she had the option of either being buried on top, or on the bottom, of Mr. Wilkins.
|sOn June 12, 2009, plaintiffs counsel informed Ms. Ragle that she intended to *22 sue the city if the sidewalk was not removed. Ms. Ragle informed him that the request to remove the sidewalk requires the city to follow state law and local ordinances to revise the cemetery plot. More specifically, it must seek authorization from the Shreveport City Council to sell the new plot, and it must competitively bid the sale of the new plot.
On May 20, 2010, Mrs. Wilkins filed a petition to enforce the alleged agreement and to prevent the stacking of bodies at the Greenwood Cemetery. In response to the petition, the city filed a dilatory exception of prematurity, alleging that her suit is premature because she did not present her request to the Shreveport City Council.
The city’s exception of prematurity was referred to the merits, and the matter proceeded to trial on December 6, 2011.
At trial, Mr. Gallagher testified that he told Mrs. Wilkins that the sidewalk could be removed, and that she would have a place to be buried right next to her husband. However, he also admitted that no contract existed between Suhor and the city, and that he did not have the authority to have the sidewalk removed.
Mr. Box testified that it was not uncommon to put more than six graves in a six-grave space. He stated that he inspected the public sidewalk at issue, as well as the family plot, and noted that it “appeared” that there was room to put another space. If necessary, Mrs. Wilkins’ husband could be moved slightly over without disturbing the sidewalk.
|4Ms. Ragle testified that the city, yia SPAR, is responsible for Greenwood Cemetery. She further testified that in her capacity as director of SPAR, she did not have the authority to create a plot for Mrs. Wilkins. The city does not have the au-thoi’ity to “sell, donate, or give away public property.” She further stated that even if she did state that she could remove the public sidewalk to create a plot for Mrs. Wilkins during the March 20, 2007, meeting, she would be exceeding her authority as the director of SPAR.
Ms. Ragle also noted that Mrs. Wilkins could move her family members to make room for an additional gravesite, but it must occur within the area that “they have already bought, paid for, and have a deed to.” She opined that the city council does not have to be involved if Mrs. Wilkins stays within the family plot.
At the close of evidence, the trial court instructed counsel for each party to draft a judgment that would permit the plaintiff to be buried next to Mr. Wilkins within the boundaries of the family plot. Counsel for the parties were unable to agree on the language of the judgment. Consequently, the trial court issued a judgment on August 31, 2012, ordering that the city, if deemed necessary, is to remove the sidewalk at its expense in order to make accommodations for the plaintiff to be buried next to husband. The city’s exception was deemed moot.
The city has filed the instant appeal, asserting one assignment of error.
CLAW AND DISCUSSION
The city maintains that it has no objection to Mrs. Wilkins creating more than the six burial sites in the Leonard Johnson Wilkins plot, so long as she follows state law. In fact, it is willing to assist her in creating another burial space within her family plot. However, the city assigns as error the trial court’s decision not to order the plaintiff to pay additional expenses involved, in the event that it determines that the sidewalk needs to be removed and replaced in order for Mrs. Wilkins to be buried, at the time of her death, next to Mr. Wilkins.
*23 Louisiana courts of appeal apply the manifest error standard of review in civil cases. Detraz v. Lee, 2005-1263 (La.1/17/07), 950 So.2d 557; Hall v. Folger Coffee Co., 2003-1734 (La.4/14/04), 874 So.2d 90; Smith v. City of Shreveport, 46,596 (La.App. 2d Cir. 9/21/11), 73 So.3d 496. The trial court’s findings of facts may not be set aside on appeal unless clearly wrong or manifestly erroneous. The issue to be resolved is not whether the trier of fact was right or wrong, but whether its factual conclusions were reasonable. Where there are two permissible views of the evidence, the fact finder’s choice cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, if a court finds that the trial court committed reversible |6error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. LeBlanc v. Stevenson, 2000-0157 (La.10/7/00), 770 So.2d 766; State Farm Mut. Ins. Co. v. Carter, 46,608 (La.App. 2 Cir. 11/2/11), 77 So.3d 1036.
In the case sub judice, the trial court issued an oral ruling, holding:
The plaintiff is entitled to some agreement or some statement of understanding that she can be at peace with to know that when she — and she will need at some point to use it and the opportunity to be buried next to her husband, how that can be done. It’s doable. It’s doable. It doesn’t take the City Council Authority if I’m hearing correctly ... The bottom line is the Court feels that, based upon the testimony as well as the exhibits, that Mrs. Wilkins is entitled to a judgment or some pronouncement by the Court that she will be entitled to be buried adjacent, next to her husband in Greenwood Cemetery, in the area or the space that is consistent with her request, and that’s to the extent we are saying next to his burial vault, if I’m using the right térm, up to the space consistent with what we kind of described as the sidewalk knowing two things. One, the Court is not including the displacement of the sidewalk for purposes of creating a new space, but the Court is mindful that there should be adequate room or space to include the traditional vault size or opening of the grave and closing of the grave. That’s the language where we need Mr. Box and those who are familiar with what we need to say to make this work. But I want Mrs. Wilkins to know that based upon the evidence the Court believes and will render judgment to give her the peace of mind that she will have a judgment of the Court permitting her to be buried in the space that she has requested subject to some modification that will not require the creation of a different space or displacement of a particular walk, but we have got to work those particulars out, but she needs to go away from the Court today knowing that she will have a judgment generally as prayed for.
After the trial judge recited his ruling, the plaintiffs attorney stated, “at cost, your honor.” The trial judge responded, “Let’s work this out and see where we are because there are some things that the Court can always do regarding the cost.”
17Further, in its judgment rendered in favor of Mrs. Wilkins, the trial court stated:
*24 If the defendant, City OF SHREVEPORT, and/or its assigns as well as any subsequent owner(s) of Greenwood Cemetery, determines that the sidewalk currently situated adjacent to the Leonard Wilkins family plot located in the Greenwood Cemetery should be relocated replaced, and or otherwise moved in a manner to make reasonable physical accommodations to bury Plaintiff next to her husband, without “stacking”, the City OF SHREVEPORT, and/or its assigns as well as any subsequent owner(s) of Greenwood Cemetery, shall relocate, replace, and/or otherwise move said sidewalk in a manner to make reasonable physical accomodations to bury Plaintiff next to her husband without “creating” another burial plot, without “stacking”, and without additional expense to the plaintiff. (Emphasis added.)
As stated in the facts section above, Ms. Ragle testified that Mrs. Wilkins could move her family members to make room for an additional gravesite, but it must occur within the area that “they have already bought, paid for, and have a deed to.” She opined that with this option, the city council does not have to be involved.
Mr. Box testified that it was not uncommon to put more than six graves in a six-grave space. After viewing the family plot, he concluded that Mr. Wilkins’ vault could be moved slightly over without disturbing the sidewalk. Mr. Gallagher gave his opinion that “we would have to probably move two folks over to make room for Mrs. Wilkins.” The opinion of these two men strongly suggests that the plot has enough space to create an additional burial spot without having to remove the sidewalk by moving the existing burial vaults closer together.
The issue of the city relocating, replacing, and/or otherwise moving the sidewalk to accommodate Mrs. Wilkins’ grave at its expense would only Income into play only if, after shifting the vaults currently in the family plot, there is not enough room in the family plot to accommodate a gravesite for Mrs. Wilkins. It appears that the trial court created an equitable safeguard in favor of Mrs. Wilkins, which may never have to be used. The judgment indicates that the city will make the determination that the sidewalk must be relocated, replaced, or moved to accommodate Mrs. Wilkins’ gravesite. Based on the testimonies of both Mr. Box and Mr. Gallagher, there is a strong likelihood that the existing vaults can be shifted to accommodate Mrs. Wilkins’ gravesite, and this issue could subsequently become moot.
Further, this sidewalk serves no purpose, since it is not connected to any other walkway and ends abruptly at the foot of Mrs. Wilkins’ husband’s grave.
After a thorough examination of the record, we find that the trial court was reasonable in not ordering the plaintiff to pay additional expenses involved, in the event that the city determines that the sidewalk needs to be removed and replaced in order for Mrs. Wilkins to be buried, at the time of her death, next to her deceased husband. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the judgment rendered in favor of Corrie Johnson Wilkins is affirmed. Total costs of this appeal are assessed against the City of Shreveport in accordance with La. R.S. 13:5112 in the amount of $303.50.
AFFIRMED.

. Mrs. Wilkins’ husband died on January 3, 2010.

. A sexton is responsible for opening and closing graves at the time of burial, marking or flagging gravesites for burial, acting as a liaison between the funeral homes and the families of the deceased, and keeping records of those buried at the cemetery.

.Shelly Ragle is also spelled Shelly "Ragel” on several documents in the record.